UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MARIANO V. VANCAMPER,**

**Plaintiff,**

-vs-                                                        Case No.  6:10-cv-209-Orl-19KRS

**RENTAL WORLD, INC. a Florida corporation
doing business as A+ Rent-a-Car, FELIPE
GARIP, JR. an individual,**

**Defendants.**
_____

# ORDER

This case comes before the Court on the following:

1.      Motion for Partial Summary Judgment Against Both Defendants by Plaintiff Mariano
V. Vancamper (Doc. No. 27, filed Feb. 4, 2011);

2.      Response in Opposition to Plaintiff's Motion for Partial Summary Judgment by
Defendants Rental World, Inc. and Felipe Garip, Jr. (Doc. No. 33, filed Mar. 4,
2011); and

3.      Reply to Defendants' Response to Plaintiff's Motion for Partial Summary Judgment
by Plaintiff Mariano V. Vancamper (Doc. No. 39, filed Mar. 18, 2011).

## Background

## I.  Undisputed Facts

Plaintiff Mariano V. Vancamper seeks to recover unpaid minimum wages and overtime from
his former employer, Defendant Rental World, Inc. ("Rental World"), and the President of Rental
World, Felipe Garip, Jr.  (Doc. No. 35 ¶ 1; Doc. No. 33-1 ¶¶ 1, 17.)  Rental World rents cars to the

general public, including local residents and tourists, and occasionally sells cars at auction.  (Doc. No. 27-4 at 12; Doc. No. 33-1 ¶¶ 4, 8.)

On November 1, 2008, Vancamper was hired by Rental World to wash and clean its fleet of rental cars.[1]  (Doc. No. 33-1 ¶ 14.)  In January 2009, Vancamper became a full time employee with the additional duties of driving a shuttle bus between the Orlando airport and Rental World's rental office for the purpose of transporting Rental World's customers.  (*Id.* ¶ 15; Doc. No. 27-6 at 4.)  Vancamper's job duties also included opening and closing the rental office, performing customer service, returning voicemail messages left by customers, negotiating car rental rates with customers over the phone, booking car rentals over the phone, and changing the oil, tires, batteries, and brakes of rental cars.  (Doc. No. 27-6 at 4; Doc. No. 33-3 at 14, 20, 45, 50, 53-54.)  Vancamper worked full-time for Rental World from January 9, 2009 through January 11, 2010.  (Doc. No. 27-4 at 11; Doc. No. 27-6 at 3; Doc. No. 33-1 ¶ 17.)

According to Defendant Garip, at the time Vancamper was hired on a full-time basis, Vancamper "agreed to work for an hourly rate of $6.50, a set hourly schedule, and agreed to accept extra compensation in the form of the personal use of a company car and company cellular phone."  (Doc. No. 33-1 ¶ 16.)  Garip also asserted that Vancamper "was informed that he would receive tips in connection with his shuttle bus transportation duties, which were in addition to his regular pay."  (*Id.*)

---

[1] Garip averred that Vancamper was hired on November 1, 2008, "as an independent contractor to wash and clean . . . cars, [and that] [h]e was not given a set work schedule and was paid a flat rate by the day/job."  (Doc. No. 33-1 ¶ 14.)  However, Defendants concede in their Response in Opposition to Summary Judgment that Vancamper "was an employee for the relevant period (November 2008 through January 11, 2010)."  (Doc. No 33 at 5.)

Vancamper recorded all of his hours worked on time cards, (Doc. No. 33-1 ¶ 19), and the parties raise no challenges to the accuracy of Vancamper's time cards or the amounts Rental World paid Vancamper each week. (Doc. No. 27-5 at 1-102.) Further, it is undisputed that Vancamper was paid $6.50 per hour from January 9, 2009, until December 19, 2009, and $7.50 per hour from December 20, 2009, until January 9, 2010. (Doc. No. 27-6 at 3-4; Doc. No. 27-4 at 11.) Garip further contends that Vancamper was provided "extra compensation" by being given the use of an automobile, gasoline expense, auto insurance expense, the use of a cellular telephone, and tips in excess of $30 per month from customers that he shuttled. (Doc. No. 33-1 ¶¶ 16, 22-23.) Although Vancamper acknowledged receiving the use of a car, car insurance, and a cellular phone from Rental World, he maintains that he paid for his own gas and that his monthly tips averaged between $6 and $10. (Doc. No. 33-3 at 21-24.)

## II.  Procedural History

Plaintiff's Amended Complaint alleges that Rental World and Garip are liable for unpaid minimum wages and overtime pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207. (Doc. No. 35 at 1-7, filed Mar. 8, 2011.) Plaintiff also asserts a claim against Rental World for retaliatory discharge in violation of Section 440.205, Florida Statutes. (*Id.* at 7-8.) On February 4, 2011, Vancamper moved for partial summary judgment on the FLSA minimum wage and overtime claims against Rental World and Garip. (Doc. No. 27.) Rental World and Garip filed a response in opposition, (Doc. No. 33), and Vancamper has filed a reply. (Doc. No. 39.)

## Standard of Review

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" under the applicable substantive law if it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, the court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

**Analysis**

The FLSA requires a covered employer to pay all non-exempt employees minimum wages for all hours worked and overtime compensation at one and one-half times the regular rate of pay for all hours exceeding 40 hours per workweek. 29 U.S.C. §§ 206(a)(1), 207(a)(2). Defendants concede that Vancamper was an employee of Rental World and the time he worked there, *see supra* note 1, and that Garip is personally liable as an employer under the FLSA to the extent that Rental World is liable. (Doc. No. 33 at 5-6.) However, the parties dispute whether: (1) Vancamper's employment with Rental World was governed by the FLSA; (2) Rental World is entitled to a tip credit for Vancamper; and (3) Vancamper's use of a company car, car insurance, and cellular phone constitutes compensation for purposes of the FLSA. (*Id.* at 3-6; Doc. No. 27 at 6-15.) Vancamper further asserts, without any argument in opposition by Defendants, that he is entitled to liquidated damages under 29 U.S.C. § 216(b) in an amount equal to his unpaid minimum wages and overtime. (Doc. No. 27 at 15-20.) The Court addresses each of these issues in turn.

## I. Whether Vancamper's Employment with Rental World is Governed by the FLSA

To recover unpaid minimum wages or overtime under the FLSA, a plaintiff must prove one of two types of coverage: (1) "individual coverage," in which the employee was "engaged in commerce or in the production of goods for commerce"; or (2) "enterprise coverage," in which the employee was "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1); *Thorne v. All Restoration Servs.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006). Vancamper argues that undisputed evidence of record establishes individual coverage and that Rental World has admitted to enterprise coverage. (Doc. No. 27 at 9-13.) Defendants do not address Rental World's admission that it is "an enterprise engaged in

commerce within the meaning of 29 U.S.C. § 203(s)(1)(A)," (Doc. No. 27-2 at 1, 17), and in the absence of a request to withdraw or amend this admission, Defendants must be deemed to have conceded the issue of enterprise coverage in favor of Vancamper.[2] (Doc. No. 33 at 4-5.) Further, notwithstanding Defendants' failure to raise any arguments in opposition to Vancamper's claim of "individual coverage," Vancamper correctly asserts that undisputed facts establish individual coverage under the FLSA.

To establish individual coverage under the FLSA, Vancamper must show that "he was (1) engaged in commerce or (2) engaged in the production of goods for commerce." *Thorne*, 448 F.3d at 1266 (citing 29 U.S.C. § 207(a)(1)). "The Supreme Court has articulated that it is the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce." *Id.* (citing *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943)). "Therefore, for an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the

---

[2] The term "enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) . . . .

29 U.S.C. § 203(s)(1).

Although Garip averred that Rental World grossed less than $500,000 annually, (Doc. No. 33-1 ¶¶ 9-12), Defendants do not request the withdrawal or amendment of Rental World's admission that it is "an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A)." (Doc. No. 27-2 at 1, 17.) Absent a motion to withdraw or amend the admission, the Court must consider enterprise coverage under 29 U.S.C. § 203(s)(1)(A) to be conclusively established. *See* Fed. R. Civ. P. 36(b) ("A matter admitted under [Rule 36] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.").

actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Id.* (citations omitted).  Stated differently, an employee's work must be "actually in commerce or . . . so closely related to the movement of commerce that it is for practical purposes a part of it rather than an isolated local activity." *Marshall v. Victoria Transp. Co., Inc.*, 603 F.2d 1122, 1124 (5th Cir. 1979) (citations omitted).[3]  "[A]ny regular contact with commerce, no matter how small, will result in coverage." *Id.* (citations omitted).

Vancamper asserts that his shuttling of Rental World customers between the Orlando airport and Rental World's rental office was activity in interstate commerce.  (Doc. No. 27 at 11.)  "When persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within the boundaries of one state does not make that portion of the trip any less interstate in character." *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1229 (11th Cir. 2009) (quoting *United States v. Yellow Cab. Co.*, 332 U.S. 218, 228 (1947)).  "As a result, purely intrastate transportation can constitute part of interstate commerce if it is part of a 'continuous stream of interstate travel.'" *Id.* (quoting *Chao v. First Class Coach Co., Inc.*, 214 F. Supp. 2d 1263, 1272 (M.D. Fla. 2001)).  "For this to be the case, there must be a 'practical continuity of movement' between the intrastate

---

[3] The Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).  In addition, the Eleventh Circuit has adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit.  *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

segment and the overall interstate flow." *Id.* (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943)).

Eleventh Circuit precedent makes clear that pre-arranged, local shuttling of interstate passengers to and from airports comprises part of a continuous stream of interstate travel. *See, e.g.*, *Abel v. S. Shuttle Servs., Inc.*, ___ F.3d ___, 2011 WL 255294, at **6-7 (11th Cir. Jan. 28, 2011) (finding that an airport shuttle service was interstate commerce where "a large portion" of the shuttle reservations were made through travel websites that offered free shuttle transportation to and from the airport with the purchase of a vacation); *Walters*, 575 F.3d at 1230 (reasoning that a shuttle from an airport to a cruise port was interstate commerce because the shuttle service was bundled as part of the cruise package and thus part of the continuous stream of interstate travel); *Executive Town & Country Servs., Inc. v. City of Atlanta*, 789 F.2d 1523, 1525-26 (11th Cir. 1986) (noting that an airport limousine service engaged in interstate commerce because 90% of its business was pre-arranged trips to and from an international airport); *Charter Limousine, Inc. v. Dade Cnty. Bd. of Cnty. Comm'rs*, 678 F.2d 586, 587, 589 (5th Cir. Unit B 1982) (finding interstate commerce by a local limousine franchise that transported passengers to and from an international airport because "substantially all" of the business was pre-arranged through interstate communication with a franchise reservation network and travel agents). The pre-arranged nature of the transportation distinguishes it from wholly intrastate transportation procured by travelers after reaching the destination airport, which does not amount to interstate commerce. *See Executive Town & Country*, 789 F.2d at 1525-26 ("Generally, taxicab service between airports and businesses and homes is not within the stream of interstate commerce, [as it] is only 'casual and incidental' to the taxicab's normal course of business, which is to service the needs of any passenger requesting transportation,

not just those passengers traveling on an interstate journey."); *Mateo v. Airport Rental Co.*, 240 F.2d 831, 835 (9th Cir. 1957) (finding that a shuttle service lacking any contract with an airline and which was mostly hired by interstate passengers upon arriving at the airport was not interstate commerce).

It readily follows from the pre-arranged transportation services found to be interstate commerce that Vancamper's shuttling of Rental World customers between the Orlando airport and the Rental World rental office to consummate pre-arranged car rentals was activity in interstate commerce. Vancamper shuttled customers between the airport and Rental World's rental office at least once per day on most workdays. (Doc. No. 33-3 at 24-25, 48-49.) Vancamper "regularly transported customers who had come from outside the State of Florida," (Doc. No. 27-2 at 7-8, 20-21), and "many" of Rental World's customers resided outside Florida and the United States. (*Id.* at 14, 23; Doc. No. 33-3 at 49.) Rental World secured rental car reservations from customers by phone, fax, mail, email, and its website. (Doc. No. 27-2 at 14-15, 23-24; Doc. No. 33-3 at 53-54.) Further, Vancamper testified that shuttled customers reserved rental cars from Rental World before they came to Orlando.[4] (*Id.* at 53.) Based on this undisputed evidence, Vancamper regularly shuttled interstate travelers from the Orlando airport to Rental World's office for the pre-arranged purpose of renting cars. Finding no argument by Defendants or authority to the contrary, Vancamper's shuttling of customers was "part of a continuous stream of interstate travel" and constituted activity in interstate commerce. *Walters*, 575 F.3d at 1229 (internal quotation omitted); *see also Rodilla v. TFC-RB, LLC*, No. 08-21352-CIV-AMS, 2009 WL 3720892, at **7-8 (S.D. Fla.

---

[4] Defendants do not dispute Vancamper's personal knowledge of this fact. In any case, Vancamper regularly assisted customers make reservations over the phone, negotiated rental car rates over the phone, and "check[ed]-in" customers using Rental World's computer reservation system. (Doc. No. 33-3 at 17, 20, 45.)

Nov. 4, 2009) ("[A] common-sense understanding of how car rental agencies at the airport conduct their business, *including . . . providing transportation for customers from the airport to the rental agencies' car lots*, strongly suggests that there is an intimate relationship between interstate travel and the services provided by the car rental agencies . . . ." (emphasis added)).

Vancamper also asserts that his cleaning and repair of Rental World's rental cars was activity in commerce.  (Doc. No. 27 at 12.)  It is well-settled that "employees performing the work involved in the maintenance, repair, or improvement of existing instrumentalities of commerce" are "engaged in commerce" and thus subject to individual coverage under the FLSA.  29 C.F.R. § 776.11(a).  Despite the purely intrastate use of Rental World's rental cars, (Doc. No. 33-1 ¶¶ 5-6; Doc. No. 33-3 at 17), Vancamper's car repairs were directly related to interstate commerce because the repairs permitted interstate travelers to rent cars from Rental World as part of their overall travel plans.  *See Rodilla*, 2009 WL 3720892, at **2, 8 (finding that the plaintiffs' servicing and cleaning of rental cars owned by third-party rental agencies "was directly related to interstate commerce . . . through allowing those passengers who arrive at the airport through interstate travel, to rent as part of their travel, vehicles whose maintenance has been facilitated by the Plaintiffs' work").

Vancamper was further engaged in interstate commerce by answering customer's telephone calls each day and negotiating rental car rates with customers over the phone.  (Doc. No. 33-3 at 20, 45, 53-54.)  Although it is unclear how frequently each day Vancamper spoke with customers and negotiated rental rates over the phone, it is undisputed that Vancamper worked alone every Sunday, (Doc. No. 33-3 at 18), and that Garip placed Vancamper "on the phone more" after a co-worker named Amelio stopped working for Rental World.  (*Id.* at 20.)  Finding no evidence to the contrary, Vancamper's regular telephone conversations with customers and negotiation of rental car rates

engaged him in interstate commerce. *See Thorne*, 448 F.3d at 1266 (noting that an employee is engages in commerce "by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel").

In summary, Vancamper's regular shuttling of Rental World customers, cleaning and repair of Rental World's rental cars, and telephone conversations with customers for the purpose of reserving rental cars establish individual coverage under the FLSA.

## II. Whether Rental World Can Claim a Tip Credit for Vancamper

The parties dispute whether Vancamper's tips from shuttling customers may be credited to offset any failure of Rental World to pay Vancamper wages required by the FLSA. (Doc. No. 27 at 14; Doc. No. 33 at 5.) The employer has the burden of proving that it is entitled to take a tip credit for an employee and the amount of tips received by the employee to be credited. *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979); *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1369 (S.D. Fla. 2009) (citing *Barcellona*, 597 F.2d at 467); *Smith v. Noso, Inc.*, No. 6:06-cv-1123-Orl-28KRS, 2007 WL 2254531, at *4 (citing *Barcellona*, 597 F.2d at 467). The following requirements must be met for an employer to claim a tip credit: (1) the tip credit must be claimed for a "tipped employee" as defined in 29 U.S.C. § 203(t); (2) the employee must receive proper notice of 29 U.S.C. § 203(m); and (3) the employee must retain all tips received, except where there is a lawful tip pooling agreement. *Ash*, 676 F. Supp. 2d at 1369 (citing 29 U.S.C. § 203(m)).

With respect to the first element, a "'tipped employee' means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). Vancamper testified during his deposition that he received on average between $6

and $10 in tips per month.  (Doc. No. 33-3 at 24.)  Garip averred that Vancamper, "during the course of his employment with the Defendants, received tips in excess of $30 per month."[5]  (Doc. No. 33-1 ¶ 22.)  The conflicting statements of Vancamper and Garip present a genuine issue of material fact regarding the amount of tips that Vancamper "customarily and regularly" received and thus whether Vancamper is a "tipped employee" under Section 203(t).

Turning to the second element, Defendants must establish that Vancamper was provided sufficient notice that Defendants sought a tip credit under 29 U.S.C. § 203(m).  *Ash*, 676 F. Supp. 2d at 1369.  To provide sufficient notice, "an employer must inform its employees that it intends to treat tips as satisfying part of the employer's minimum wage obligations."  *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1310 (S.D. Fla. 2007) (citing *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 298 (6th Cir. 1998)); *see also Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1322 (1st Cir. 1992) ("We read section 3(m) to require at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations.").  "Employers do not have to 'explain' the tip credit to employees, however; it is enough to 'inform' them of it."  *Pellon*, 528 F. Supp. 2d at 1310 (quoting *Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048(GEL), 2006 WL 851749, at *19 (S.D.N.Y. 2006)).  "To 'inform' an employee requires less effort than it would to 'explain' the tip credit to the employees."  *Id.* (citing *Kilgore*, 160 F.3d at 298).

In *Pellon*, the court noted that an employer sufficiently informed the plaintiffs of the tip credit by "explaining to the plaintiffs that they would receive $2.13 per hour and the remainder of

---

[5] Vancamper does not contend that Garip lacks personal knowledge of this fact. Accordingly, the Court does not address that issue at this time.

their pay would be in tips." *Pellon*, 528 F. Supp. 2d at 1310 (citation omitted).  Unlike the statement in *Pellon* which noticed employees that their wage was comprised of a fixed hourly rate plus tips, Garip maintained that Vancamper "was informed that he would receive tips in connection with his shuttle bus transportation duties, which were *in addition to his regular pay*."  (Doc. No. 33-1 ¶ 16 (emphasis added).)  Although the Court must draw all reasonable inferences in favor of Defendants as the non-moving parties on Vancamper's Motion for Partial Summary Judgment, *Anderson*, 477 U.S. at 255, it is unclear from Garip's statement to Vancamper that his tips "were in addition to his regular pay," whether Rental World notified Vancamper of its intent "to treat [his] tips as satisfying part of [its] minimum wage obligations." *Pellon*, 528 F. Supp. 2d at 1310.  Accordingly, the Court is unable to determine as a matter of law on this record, without more, whether Vancamper was properly notified of the tip credit under 29 U.S.C. § 203(m) at this juncture.

With respect to the third element for claiming a tip credit, there is no evidence of record squarely addressing whether Vancamper retained all of the tips he received.  In light of the fact that Vancamper received tips from shuttled customers, (Doc. No. 33-3 at 24), and that Defendants did not add Vancamper's tips when calculating his wages, (Doc. No. 27-3 at 11, 24), the Court must draw an inference in favor of Defendants as the non-moving parties that Vancamper retained all of the tips he received, thereby precluding the entry of summary judgment on this element.

Notwithstanding the three elements for taking a tip credit, Vancamper contends that Defendants are not entitled to a tip credit as a matter of law because they failed to add any tips that he may have received when calculating his wages.  (Doc. No. 27 at 14.)  Vancamper does not cite, and the Court does not find, any authority supporting this argument.

Pursuant to 29 C.F.R. § 516.28, an employer seeking a tip credit for a tipped employee "shall maintain and preserve payroll or other records containing," *inter alia*, the "[a]mount by which the wages of each tipped employee have been deemed to be increased by tips as determined by the employer . . . ." 29 C.F.R. § 516.28(a)(3).  In addition, "[t]he amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week."  *Id.*

Both Garip and Rental World admittedly failed to "add [Vancamper's] tips when calculating [his] wages."  (Doc. No. 27-2 at 8, 21; Doc. No. 27-3 at 11, 24.)  In addition, there is no evidence of record that Defendants maintained any record of the amount of tips collected by Vancamper, maintained records of any tip credits applied to Vancamper's wages, or notified Vancamper of weekly changes in the amount of the tip credit as required by 29 C.F.R. § 516.28(a)(3).  However, Vancamper does not cite, and the Court does not find, any authority that Defendants' failure to comply with the record-keeping requirements of 29 C.F.R. § 516.28, by itself, precludes Defendants from taking a tip credit against Vancamper's wages as a matter of law.

The few cases discussing the consequences of failing to maintain records under 29 C.F.R. § 516.28 indicate that a tip credit is precluded as a matter of law only where there is no objective evidence that the employee received at least the statutory minimum monthly tip amount under 29 U.S.C. § 203(t).  In *Brennan v. Zager*, 1975 WL 1071 (M.D. Tenn. Mar. 12, 1975), *aff'd*, 529 F.2d 524 (6th Cir. 1975), the court found that waitresses were not "tipped employees" or subject to a tip credit not only because the defendants failed to comply with the requirements of 29 C.F.R. § 516.28, but also because there was no "objective proof by defendants that tips actually received by the waitresses customarily and regularly exceeded" the statutory minimum.  *Id.* at **3, 5-6.  Similarly,

in *Brennan v. Ledet*, No. 70-3225, 1974 WL 1088, (E.D. La. Mar. 1, 1974), the court found that an employer was not entitled to a tip credit where the employer was merely was under the impression that employees made more than $20 per month in tips and failed to keep the records required by 29 C.F.R. § 516.28.  *Id.* at *1.  Finally, in *Bingham v. Airport Limousine Serv.*, 314 F. Supp. 565 (W.D. Ark. 1970), the court determined that limousine drivers were not "tipped employees" where there was no "documentary evidence of individual tip receipts" and where the employer "made no attempt to keep the [required] records."  *Id.* at 571-72.

In each of the aforementioned cases, the courts relied on more than the failure of the employer to comply with 29 C.F.R. § 516.28 to find that the employers were not entitled to a tip credit.  Finding no other authority on point, Defendants' failure to keep the records listed in 29 C.F.R. § 516.28, without more, does not preclude the application of a tip credit.  Accordingly, for the reasons discussed above, there are genuine issues of material fact regarding whether Defendants are entitled to a tip credit against any unpaid wages owed to Vancamper.

## III.  Automobile, Insurance, Gasoline, and Cellular Phone as Additional Compensation

The parties dispute whether Vancamper's use of a car, car insurance, gasoline, and a cellular phone provided by Rental World offset the overtime compensation that Rental World owed Vancamper as permitted by 29 U.S.C. § 207(h)(2).  (Doc. No. 27 at 14; Doc. No. 33 at 5-6.)  The Defendants bear the burden of establishing a credit for overtime compensation under Section 207(h)(2).  *See Leonard*, 614 F. Supp. at 1187 (noting that an employer bears the burden of establishing a credit under 29 U.S.C. § 203(m) against the overtime owed to an employee (citing *Donovan*, 676 F.2d at 473-76)).

Under Section 207(h)(2), the forms of compensation described in 29 U.S.C. § 207(e)(5)-(7) are creditable toward overtime compensation.  Those forms of compensation are as follows:

> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;

> (6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;

> (7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section, where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek;

29 U.S.C. § 207(e)(5)-(7).

These provisions plainly contemplate a dollar-for-dollar credit against overtime pay for premium pay awarded on particular days and times.  *Wheeler v. Hampton Twp.*, 339 F.3d 238, 245 (3d Cir. 2005).  The parties do not cite, and the Court does not find, any authority that these provisions encompass use of a car, car insurance, gasoline, or a cellular phone provided by an employer.  Moreover, because Vancamper's uncontroverted time sheets show that he was never paid extra compensation for working during the periods described in Section 207(e)(5)-(7), (Doc. No. 27-5 at 1-102), Defendants are not entitled to any overtime credit under Section 207(h)(2).

## IV.  Minimum Wages and Overtime Owed Vancamper

Subject to any applicable tip credit, *see supra* part II, Vancamper is "entitled to the full minimum wage for every hour worked," and one and one half times his regular rate of pay for every hour of overtime worked. *Smith*, 2007 WL 2254531, at *4 (quoting *Barcellona*, 597 F.2d at 467); *see also* 29 U.S.C. §§ 206(a)(1), 207(a)(2). Vancamper bears the burden of proving the hours he worked without proper compensation. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-67 (1946).

The parties do not dispute that Vancamper's time sheets and paychecks accurately reflect the hours he worked and the amounts he was paid by Rental World. (Doc. No. 27-5 at 1-102.) In addition, Defendants do not challenge Vancamper's spreadsheet summarizing and calculating the amount of unpaid minimum wages and overtime. (Doc. No. 27-7 at 1-2.) However, after reviewing Vancamper's spreadsheet and the evidence purporting to support the figures listed on the spreadsheet, the Court finds several errors in Vancamper's calculations of unpaid minimum wages and overtime.

First, the amount of unpaid overtime for Vancamper's final three weeks of employment was improperly calculated. During that time period, Vancamper's regular rate of pay was $7.50. (Doc. No. 27-7 at 2.) Thus, his overtime rate of pay during those three weeks was $11.25, and he is owed the following amounts of unpaid overtime for his final three weeks of employment:

| | |
|---|---|
| Week of 12/26/2009 | $3.75 * 14 hours = $52.50 |
| Week of 1/2/2010 | $3.75 * 23 hours = $86.25 |
| Week of 1/9/2010 | $3.75 * 13 hours = $48.75 |

Vancamper erroneously calculated the overtime for these three weeks using a base wage of $7.25 instead of $7.50, resulting in a shortfall of $6.25 over those three weeks.

-17-

Second, Vancamper included several figures on the spreadsheet that were not supported by any evidence of record.  Vancamper represented that based upon the paychecks of record, he was paid $312.00 for the week of November 8, 2008, $312.00 for the week of November 15, 2008, and $112.50 for the week of February 21, 2009.  (Doc. No. 27-7 at 1.)  No paychecks for those weeks or amounts are present in the record, (Doc. No. 27-5), and finding no evidence of the hours Vancamper worked on those weeks, the Court cannot award unpaid minimum wages or overtime for those weeks at this juncture.  *See Anderson*, 328 U.S. at 687 (noting that where the employer fails to maintain records of the employee's hours, the employee bears the initial burden of proving "that he has in fact performed work for which he was improperly compensated and . . . the amount and extent of that work as a matter of just and reasonable inference").

Third, Vancamper reported on the spreadsheet that he was paid $112.00 for the week of March 7, 2009 and $266.50 for the week of March 21, 2009.  (Doc. No. 27-7 at 1.)  However, the paychecks of record show that Vancamper was actually paid $112.50 and $266.00 for those weeks.

Fourth, Vancamper's time cards for the weeks of May 9, 2009 and May 23, 2009, show that he worked 34 and 40 hours, (Doc. No. 27-5 at 35, 37), not 46 and 49 hours as reported on the spreadsheet.  (Doc. No. 27-7 at 1.)  For these same weeks, Vancamper's time sheets show that he was paid $238.00 and $260.00, not $299.00 and $318.00 as reported on the spreadsheet.  (Doc. No. 27-5 at 35-38; Doc. No. 27-7 at 1.)

Finally, Vancamper did not accurately sum all of the unpaid minimum wages and overtime listed in his calculation spreadsheet.  (Doc. No. 27-7 at 1-2.)  It appears that Vancamper omitted the first five weeks of unpaid minimum wage from his total for minimum wages owed.  Further, it is unclear how Vancamper arrived at the total overtime owed reflected on the spreadsheet.  Adding

together all corrected unpaid minimum wage and overtime figures, (Doc. No. 27-7 at 1-2),  it appears that Vancamper is owed at least $1,797.89 in unpaid minimum wages and $1,860.90 in unpaid overtime, less any tip credit to which Defendants are entitled to take.  However, in view of the foregoing calculation errors and requests for unpaid wages not supported by the present evidence of record, the Court cannot enter partial summary judgment on the total amount of unpaid wages owed to Vancamper at this time.

## V.  Liquidated Damages

If an employer fails to pay wages as required by the FLSA, the employer is generally liable to the affected employee "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  An award of liquidated damages is mandatory unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1282 (11th Cir. 2008) (internal quotation omitted); *see also Spires v. Ben Hill Cnty.*, 980 F.2d 683, 689 (11th Cir. 1993) ("[L]iquidated damages are mandatory absent a showing of good faith.").

Defendants raise no arguments that they violated the FLSA in good faith, and as pointed out by Vancamper, Defendants' admissions demonstrate the absence of good faith.  Rental World admittedly was aware of the FLSA minimum wage and overtime pay requirements prior to the start of Vancamper's employment in November 2008.  (Doc. No. 27-2 at 3, 18.)  Additionally, Rental World conceded that it did not seek an opinion from the Department of Labor regarding whether Vancamper was covered under the FLSA.  (*Id.* at 3-4, 18.)  Vancamper's time sheets further

illustrate that Defendants never attempted to comply with the FLSA minimum wage or overtime requirements, despite the fact that Vancamper regularly worked over 40 hours per week for over one year.  (Doc. No. 27-5 at 1-102.)  In the absence of any contrary evidence or argument by Defendants suggesting a good faith violation of the FLSA, Vancamper is entitled to the full amount of liquidated damages authorized by 29 U.S.C. § 216(b).

## VI.  Hearing on Motion

Pursuant to Federal Rule of Civil Procedure 56(g), if a court does not grant all of the relief requested by a motion for summary judgment, "it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating that fact as established in the case."  In view of the foregoing analysis, the Court will hold a hearing to determine what remaining facts are properly treated as undisputed and established in this case and, on the other hand, what genuine issues of material fact remain for trial.

### Conclusion

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion for Partial Summary Judgment Against Both Defendants by Plaintiff Mariano V. Vancamper (Doc. No. 27) is **GRANTED in part, DENIED in part, and DEFERRED in part** as follows:

1.      The Motion is **GRANTED** to the extent Plaintiff seeks a finding that his employment with Defendants Rental World, Inc. and Felipe Garip, Jr. is governed by the Fair Labor Standards Act.

2.      The Motion is **DENIED** to the extent Plaintiff seeks a finding that Defendants are ineligible to take a tip credit against his unpaid wages.

3.      The Motion is **GRANTED** to the extent Plaintiff seeks a finding that Defendants are ineligible to claim a credit for gasoline, use of a car, car insurance, and a cellular telephone against the unpaid overtime owed to Plaintiff under 29 U.S.C. § 207(h)(2).

4.      The Motion is **GRANTED** to the extent Plaintiff seeks to recover liquidated damages in an amount equal to the amount of unpaid minimum wages and overtime owed.

5.      Ruling on the compensatory damages to which Plaintiff is entitled is **DEFERRED**. The record reflects that Plaintiff is entitled to at least $1,797.89 in unpaid minimum wages and $1,860.90 in unpaid overtime, less any tip credit to which Defendants may be entitled.  However, it is unclear from the present record whether Plaintiff is entitled to additional unpaid wages.

6.      A hearing will be held on Tuesday, April 12, 2011 at 1:30PM in Courtroom 3 B, Third Floor, U.S. District Court, 401 W. Central Blvd., Orlando, Florida 32801 to ascertain what genuine issues of material fact remain pending in this case.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on March 31, 2011.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record